## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20505

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2020

Lyle W. Cayce
Clerk

SIX DIMENSIONS, INCORPORATED,

> Plaintiff - Appellee Cross-Appellant

v.

PERFICIENT, INCORPORATED,

> Defendant - Cross-Appellee

LYNN M. BRADING,

> Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2680

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Six Dimensions, Inc., sued former employee Lynn M. Brading and a competitor, Perficient, Inc. The claims were for breach of contracts, unfair competition, and misappropriation of trade secrets. The district court entered summary judgment on liability in favor of Six Dimensions on one of the contract claims but rejected the other. It entered summary judgment in favor of the defendants on the unfair-competition claim. A jury awarded damages to Six Dimensions for the contract breach but rejected its claim for

No. 19-20505

misappropriation of trade secrets. We REVERSE the part of the judgment holding that Brading breached a contract and owed damages to Six Dimensions. We otherwise AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a business dispute arising from a prior employment relationship between Six Dimensions and Brading. Six Dimensions is a digital marketing firm that provides consulting services for information technology. Six Dimensions hired Brading in 2014 as a Corporate Partnership Manager. One of Brading's main duties was to work with software companies, including Adobe, on Six Dimensions' behalf. As one of Brading's conditions of employment, Six Dimensions required Brading to sign an employment agreement (the "2014 Agreement"). Among the terms of the 2014 Agreement, Brading committed that for two years after Brading left her employment Brading would not "solicit, recruit or hire any employee or consultant of [Six Dimensions] to work for a third party . . . or assist any third party, person or entity to solicit, recruit or hire any employee or consultant of" Six Dimensions. Brading also agreed that upon termination of her employment, Brading would "sign and deliver" an agreement titled "Termination Certification," which was attached to the 2014 Agreement as "Exhibit B."

Brading terminated her employment with Six Dimensions on June 10, 2015, and Brading signed the Termination Certification on June 18 (the "2015 Agreement"). That document restated the obligation Brading owed to Six Dimensions, first stated in the 2014 Agreement, that for two years she would not "directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with Company, or attempt to solicit, induce, recruit, encourage or take away

2

employees or consultants of Company, either for [herself] or for any other person or entity."

After resigning from Six Dimensions, Brading began working for Perficient, Inc., another information technology servicing company, as an Adobe Alliance Manager. Despite her just-signed recommitment not to solicit, Brading immediately began a campaign of soliciting Six Dimensions employees to work for Perficient. For example, on August 26, 2015, Brading emailed Aaron Price, who was still employed by Six Dimensions: "We are hiring like crazy. . . . Would take the entire crew of developers, architects, PMs etc from 6D if we could!!" After making that implied invitation, she followed with pretense: "But I cannot have this conversation with you because of my non compete." She closed by typing as a separate line — "Wink ;)" — and finally, "I really miss you." Ultimately, Brading convinced seven Six Dimensions employees to work for Perficient, one of whom was Price.

Like Brading, Price signed an employment agreement with Six Dimensions. Price agreed that when his employment with Six Dimensions ended, he would "promptly deliver to 6D all materials of a secret or confidential nature" back to Six Dimensions. Price further agreed that during and indefinitely after his employment with Six Dimensions, he would not "directly or indirectly, divulge, disclose or appropriate to his own use, or to the use of any third party," any of Six Dimensions' confidential information or trade secrets. Nevertheless, Price testified at trial that he had obtained confidential training materials on a "thumb-drive" before he left Six Dimensions, and that he failed to give the training materials back to the company because he intended to use the information to benefit Perficient. Price further testified, though, that he never delivered the training materials to anyone at Perficient and that he never uploaded the training materials to a Perficient system.

No. 19-20505

Six Dimensions filed suit on September 5, 2017, in the United States District Court for the Southern District of Texas. The summary judgment rulings we discuss were made when a First Amended Complaint, filed on June 29, 2018, was the operative complaint. In that amended complaint, Six Dimensions claimed that both Brading and Perficient had: (1) tortiously interfered with Six Dimensions' contracts with employees; (2) tortiously interfered with prospective economic relations; and (3) been unjustly enriched. Six Dimensions' independent claims against Brading were that Brading had breached her contracts and had violated a California statute on unfair competition. Six Dimensions' independent claims against Perficient were for unfair competition and for violations of both a Texas statute and a California statute that protected trade secrets.

On October 30, 2018, Six Dimensions moved for summary judgment on its claims for breach of contract. The same day, Brading and Perficient moved for summary judgment on all claims. The district court on December 27 entered summary judgment for Six Dimensions on its claims for breach of contract. The court held that the 2014 Agreement and 2015 Agreement were separate contracts and that both had been breached. With respect to the defendants' motions, the district court held that the California statute on unfair competition did not apply extraterritorially; therefore, Six Dimensions' claim under that statute was dismissed. The court denied the rest of the defendants' summary-judgment motion.

On January 4, 2019, Perficient and Brading moved for reconsideration of the district court's summary judgment on breach of contract. Just over one week later, the district court in a brief order denied the motion. Perficient and Brading persisted and filed a second motion for reconsideration on March 14. On April 8, the district court did reconsider and determined that Six Dimensions' claim for breach of the 2014 Agreement failed in light of new

4

No. 19-20505

California authority on the issue. Six Dimensions cross appealed to reverse that conclusion. The district court did not disturb its earlier ruling that Brading had breached the 2015 Agreement. In the same order, the district court allowed the filing of a second amended complaint so that Six Dimensions could increase the amount of claimed damages.

The remaining claims went to trial from June 10 to June 14, 2019. The jury verdict was in the form of written answers to questions. Although the jury found the training materials were trade secrets, it also found that Perficient did not misappropriate them. The jury also found that Perficient had not been unjustly enriched. The final verdict form question began with the district court's instruction that Brading had breached the 2015 Agreement; the jury only had to find the amount of damages the breach caused. The jury awarded $287,702. The district court entered a final judgment based on the verdict.

Brading appealed, and Six Dimensions cross appealed.

DISCUSSION

Brading appeals the district court's grant of summary judgment on Six Dimensions' claim for breach of contract under the 2015 Agreement. Dimensions cross appeals the district court's summary dismissal of both its claim for breach of contract based on the 2014 Agreement and its claim of unfair competition under California Business and Professionals Code Section 17200. That statute is referred to as the Unfair Competition law or the "UCL." Six Dimensions also challenges the district court's denial of its motion for a new trial on its claim for misappropriation of trade secrets. We first consider Brading's appeal before turning to Six Dimensions' cross appeal.

We review a district court's grant of summary judgment *de novo*. *Ibarra v. UPS*, 695 F.3d 354, 355 (5th Cir. 2012). Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any

No. 19-20505

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When cross motions for summary judgment have been filed, "we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014).

I.     *Breach of contract under the 2015 Agreement*

Brading argues the district court erred in granting Six Dimensions' motion for summary judgment on its claim for breach of contract based on the 2015 Agreement.  Brading argues that the 2015 Agreement was not a separate contract but a component of the 2014 Agreement.

We first discuss whether this issue is properly before us.  According to Six Dimensions, Brading waived this argument by not presenting it to the district court.  Importantly, "the scope of appellate review on a summary judgment order is limited to matters presented to the district court."  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005).  Therefore, "if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."  *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (quotation marks and citation omitted).

Brading alleges there were three occasions when she made arguments about the 2015 Agreement, though two of them were only after the district court granted summary judgment on that agreement.  The only one predating summary judgment was allegedly in her response to Six Dimensions' summary-judgment motion, where, according to Brading's current briefing,

6

she "treated the 2014 Agreement and the [2015 Agreement] as a single agreement and urged that California law invalidated the entire agreement." Brading concedes that she did not actually mention the 2015 Agreement in that response but argues that was because Six Dimensions never made it clear that Six Dimensions was alleging a separate breach of the 2015 Agreement.

In considering Six Dimensions' motion for summary judgment, the district court — much more explicitly than Six Dimensions had ever done — analyzed the two documents as separate agreements and held Brading had breached both. The district court found the arguments were too late. The court discussed its local rule that if a party does not "respond to a motion," that failure "will be taken as a representation of no opposition." S.D. TEX. R. 7.4. Due to that failure, the district court held Six Dimensions' argument was uncontested that Brading breached the 2015 Agreement by soliciting Six Dimensions employees as prohibited by the 2015 Agreement. The critical effect of this ruling was that it caused the district court to rely on waiver to continue to hold that the noncompete provisions of the 2015 Agreement were enforceable, even though the district court would later hold that the same restrictions were unenforceable in the 2014 Agreement.

Brading's motion for reconsideration of summary judgment presented her first arguments about the 2015 Agreement. She renewed the arguments in a motion to dismiss Six Dimensions' claim for breach of contract based on the 2015 Agreement. Both times the arguments about the 2015 Agreement were found to be too late.

The possible tardiness of Brading's responses is insignificant if Six Dimensions' own arguments did not sufficiently identify what was signed in 2015 as a separate contract. Absent a clear claim or argument, there would be nothing on the point to which a response was owed. The one reference in the then-operative complaint when the district court ruled on the parties' cross

motions for summary judgment was in Count IV. That count concerned breach of contract and had 13 paragraphs. Six Dimensions alleged "Brading actively solicited employees of [Six] Dimensions to leave [Six] Dimensions which direct solicitation is a breach of the Employment Agreement and Termination Agreement." These are what we have called the 2014 Agreement and the 2015 Agreement, respectively. In no other paragraph does Six Dimensions refer to the Termination Agreement, *i.e.,* the 2015 Agreement.

We next examine Six Dimensions' summary-judgment motion. Only twice does the motion suggest Brading signed more than one agreement. Once is when Six Dimensions argued that "Brading cannot deny that she entered into contractual agreements" with Six Dimensions, the importance of that being that the motion referred to the "agreements," *i.e.,* the plural. The "s" could have been a typo, but regardless, we conclude the use of the plural was too minimal as to be sufficient notice of an argument. The clearest but still minimal notice to Brading was when Six Dimensions argued that Brading was wrong in arguing that California law applied and invalidated the noncompete provision:

> Defendant argues that Brading was permitted to engage in this wrongful conduct because the contract that she signed, contained a provision that is not allowed under California law. Defendant argues that even though the Amended Complaint does not accuse Brading of breaching the non-competition portion of the 2014 Agreement [Dkt 10-2], that its presence in the 2014 Agreement invalidates that agreement. Texas has no such provision. It is respectfully submitted, as asserted in the Complaint, that the law of Texas applies and as such, the 2014 Agreement is clearly breached by Brading's undisputed conduct in violating both portions of the 2014 Agreement. Further, there is no non-competition portion for the Termination Certification signed by Brading in June of 2015 and as such, under the law of either State, Brading is responsible for violating the 2015 Agreement.

Six Dimensions finally made a direct allegation in the final sentence of this one paragraph, making it the only meaningful reference to a separate agreement's having relevance in all the paper and digital filings.

A district court's holding that an argument has been waived is reviewed for an abuse of discretion. *Davis v. Fort Bend Cnty.,* 765 F.3d 480, 487 n.1 (5th Cir. 2014). In considering that discretion, we acknowledge that this ruling related at least in part to a district court's management of its docket.

We hold the following is relevant to the exercise of discretion here. Attorneys must be nimble, alert, diligent, and much else, none more than those involved in litigation. (Judges need some of the same skills.) In our judgment, though, the references to a new agreement executed in 2015 do not fairly put a reasonably attentive attorney on notice when responding. The only useful effort was in one sentence of one filing. Further, though trial judges must be allowed discretion in managing their dockets, this close question of notice could readily have justified allowing reconsideration once Brading's response was submitted. Finally, on second reconsideration of the grant of summary judgment, the district court held that the noncompete provision in the 2014 Agreement was unenforceable under California law.

Once the district court held that the noncompete provision in the 2014 Agreement was unenforceable, the court did not align its prior ruling as to the 2015 Agreement with its new holding. The court made the 2015 noncompete language enforceable only because Brading failed to respond to the one sentence about the claim in the summary judgment motion and had thus indicated "no opposition."

We conclude that the district court abused its discretion in denying Brading an opportunity to extend the arguments she had already made about the 2014 Agreement and have them apply to the 2015 Agreement. "Abuse" is

the overly harsh term of art; a more accurate description is that the district court misapplied its discretion. We will consider those arguments now.

Brading has made these arguments: (1) there was no separate agreement executed in 2015; (2) even if there were separate agreements, interpreting both together leaves California law as the one that must be applied; and (3) if what was executed in 2015 was a separate contract, there was no separate consideration and the agreement was ineffective. We need not respond to each. The analysis of the enforceability of each noncompete provision, first in the 2014 Agreement and the other in 2015, is identical. The 2015 Agreement was an exhibit to and was referenced in the 2014 Agreement. The 2014 contract stated that California law would apply. It has not been argued, and the district court did not hold, that California law no longer applied in 2015 because of a change of a party's residence or place of contract performance or for some other distinction. California law still applied.

We now turn to the question of enforceability.

## II.    *Breach of contract under the 2014 and 2015 Agreements*

On cross appeal, Six Dimensions seeks reversal of the district court's order granting Brading's motion for reconsideration on Six Dimensions' claim for breach of contract under the 2014 Agreement. The district court initially entered partial summary judgment in favor of Six Dimensions after finding that the nonsolicitation provision in the 2014 Agreement was valid under California law and holding that it was undisputed that Brading violated that provision. Brading filed a motion for reconsideration on March 14, 2019, arguing that a federal district court in California had created an intervening change in controlling law requiring reconsideration of the district court's previous order. *See Barker v. Insight Glob., LLC*, No. 16-CV-07186, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019). The district court here granted Brading's

motion for reconsideration, finding the nonsolicitation provision void "in light of *Barker*." Consequently, "Brading did not breach the 2014 Agreement's no-solicitation provision." It is the same provision in the 2015 Agreement, and the analysis that follows applies to both.

We "generally review a decision on a motion to alter or amend judgment for abuse of discretion, although to the extent that it involves a reconsideration of a question of law, the standard of review is *de novo*." *Alexander v. Wells Fargo Bank*, 867 F.3d 593, 597 (5th Cir. 2017). Brading quoted Rule 59(e) in her motion (though she did not cite it), which is for amending a final judgment "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Id.*

The motion sought reconsideration of an order granting judgment on fewer than all the claims. Rule 59(e) for revising final judgments does not apply. Six Dimensions argued that there had not been any intervening change in *controlling* law, as the *Barker* opinion was a federal court's effort to interpret state law. Rule 54(b), though, permits "reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting FED. R. CIV. P. 54(b)). Rule 54(b) applied to the motion we are considering. It can be harmless when a district court grants reconsideration under Rule 59(e)'s more exacting standard when Rule 54(b) should have been applied. *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017). We review the order under Rule 54(b).

"Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (quotation marks omitted). We consider *de novo* whether

California law voids the 2014 and 2015 Agreements' nonsolicitation provisions. *Alexander*, 867 F.3d at 597.

Federal courts applying state law must follow "the final decisions of that state's highest court." *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013). When the state's highest court has not decided an issue, we make an "*Erie* guess" as to how the state supreme court would decide the issue. *Id.* Our guess requires that we "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.*

We examine the closest decision on point from the California Supreme Court. We consider the least distinguishable case, meaning the one closest on point, to be a decision in which the plaintiff signed an agreement prohibiting him from soliciting his employer's *clients* (as opposed to fellow employees) for one year after leaving the employer. *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292 (Cal. 2008). The California Supreme Court applied a statute that stated, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." *Id.* at 288 (quoting CAL. BUS. & PROF. CODE § 16600). The court held that "[S]ection 16600 prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." *Id.* at 285. "Under the statute's plain meaning . . . an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to" Section 16600, even if a mere limitation is "reasonably based." *Id.* at 291. The court found the "agreement restricted [the plaintiff] from performing work for [the defendant-employer's] client and therefore restricted his ability to practice his accounting profession." *Id.* at 290. The provision that barred soliciting of business was void. *Id.* Significant for us, there also was a

provision barring solicitation of other employees, but it was not challenged by the plaintiff and not considered by the *Edwards* court. *Id.* at 289 n.4.

Before discussing a later decision, we backtrack to an earlier California intermediate court opinion holding that a provision prohibiting the defendant-employee, a former executive officer, from "raiding" the plaintiff's employees was not void under Section 16600. *Loral Corp. v. Moyes*, 219 Cal. Rptr. 836, 843 (Cal. Ct. App. 1985). That court reasoned the provision "does not appear to be any more of a significant restraint on his engaging in his profession, trade or business than a restraint on solicitation." *Id.*

We now come forward to ten years after the *Edwards* decision and over thirty years after the *Moyes* decision. In 2018, an intermediate California court held that a provision barring solicitation of employees was void under Section 16600 for two independent reasons. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 590 (Cal. Ct. App. 2018). One reason was that the defendants' actual profession was solicitation of traveling nurses; that made the bar a prohibition "from engaging in their chosen profession." *Id.* The other reason was that the court "doubt[ed] the continuing viability of *Moyes* post-*Edwards*." *Id.* The court explained that *Moyes*' "use of a reasonableness standard in analyzing the nonsolicitation clause there at issue thus appears to conflict with *Edwards's* interpretation of [S]ection 16600." *Id.* at 589.

*Edwards* has other guidance. The defendant there argued that Section 16600 embodied prior common law and "embrace[d] the rule of reasonableness in evaluating competitive restraints." 189 P.3d at 289. *Moyes* seems to be a rule of reason case. The *Edwards* court, though, held that "the foregoing authorities suggest [S]ection 16600 embodies the original, strict common law antipathy toward restraints of trade, while the [S]ection 16601

13

and 16602 exceptions incorporated the later common law 'rule of reasonableness' in instances where those exceptions apply." *Id.* at 948.

The direction we get from *Edwards* is that Section 16600 embodies a "strict antipathy" toward any restraint on trade. Employment agreement provisions to the contrary, regardless of their reasonableness, are void unless they fit within a statutory exception to that general rule.

The United States District Court's reasoning in *Barker*, on which the district court here relied, has been followed by several California federal courts and Delaware's Court of Chancery, causing them to find similar provisions void under Section 16600. *See Conversion Logic, Inc. v. Measured, Inc.*, No. 219-CV-05546, 2019 WL 6828283, at *4 (C.D. Cal. Dec. 13, 2019); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019); *Nuvasive, Inc. v. Miles*, C.A. No. 2017-0720, 2019 WL 4010814, at *7 (Del. Ch. Aug. 26, 2019).

Six Dimensions makes several arguments, most of which we have already analyzed. We agree that the restraint on Brading was minimal, but it was a restraint. Six Dimensions does identify three post-*Edwards* decisions by California federal district courts that upheld nonsolicitation provisions.[1] These decisions, though, rely on *Moyes*, and we conclude *Moyes* must be abandoned due to *Edwards.*

Our best *Erie* guess is that the California Supreme Court would hold that California's strict antipathy towards restraint of trade of any kind in Section 16600 voids the nonsolicitation provision here. We find no reversable error in the district court's interpretation of California law.

---

[1] *See Sonic Auto., Inc. v. Younis*, No. 15-CV-00717, 2015 WL 13344624, at *2 (C.D. Cal. May 6, 2015); *Arthur J. Gallagher & Co. v. Lang*, No. C 14-0909, 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014); *Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198, 2010 WL 546497, at *6 (N.D. Cal. Feb. 10, 2010).

### III.    *Unfair competition*

Six Dimensions in its cross appeal argues that the district court erred in entering summary judgment for Perficient on the California Unfair Competition Claim under Section 17200 of the UCL.  The First Amended Complaint, though, only asserts the Section 17200 claim against Brading, and the Second Amended Complaint incorporates its claims by reference.  Regardless, the claim fails for reasons unrelated to which defendant is the claim's target.

The district court held that Six Dimensions' claim failed as a matter of law because Six Dimensions did "not allege, or cite to any evidence showing, any misconduct or injuries occurred in California" and the "UCL does not apply 'where none of the alleged misconduct or injuries occurred in California.'"  *Six Dimensions, Inc. v. Perficient, Inc.*, 356 F. Supp. 3d 640, 648 (S.D. Tex. 2018) (quoting *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014)).

The UCL is a "California consumer protection statute[]." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013).  It makes actionable any "unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  The California Supreme Court has held that there is a presumption against extraterritorial application of the UCL.  *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011).

Six Dimensions relies on two opinions from California Courts of Appeals and one federal district court opinion to argue that its claim is entitled to application of the UCL outside California.  Six Dimensions argues there are three categories of contracting parties to consider when deciding whether the UCL applies.  That understanding of the UCL seems an overstatement, but the three categories were created by a California court certifying a nationwide

class: (1) California residents, regardless of where the injury occurred; (2) non-California residents injured by conduct in California; and (3) non-California residents injured by conduct outside of California. *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999). The *Norwest* court held that the UCL could not be applied to claims "suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Id.* at 225. Thus, in the *Norwest* court's analysis, the first two categories can support a UCL claim, but the third cannot. *Id.* at 222.

Six Dimensions argues that the UCL applies here under an analogy to the second *Norwest* category. Six Dimensions urges us to find a connection to California from the facts that a California choice-of-law provision was in Brading's 2014 Agreement, that a Six Dimensions employee based in California signed the agreement on its behalf, that Six Dimensions was originally incorporated and headquartered in California, and that Brading violated California law under the agreement. None of that demonstrates any conduct in California injuring Six Dimensions. Further, Brading is an Ohio resident, and at the time of Brading's breach of contract, Six Dimensions was incorporated in Nevada and its principal place of business was in New York.

Six Dimensions also relies on opinions holding that a choice-of-law provision is a sufficient contact for UCL application, but in both of those decisions, the defendants were California residents. *See Schlesinger v. Super. Ct.*, No. B224880, 2010 WL 3398844, at *6 (Cal. Ct. App. Aug. 31, 2010); *see also G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, No. 1:15-CV-00321, 2017 WL 220305, at *30 (E.D. Cal. Jan. 18, 2017), *rev'd on other grounds*, 788 F. App'x 452 (9th Cir. 2019). No party in the case before us resides in California.

We find no error in the district court's refusal to apply the UCL.

No. 19-20505

## IV.    *Misappropriation of trade secrets*

In Six Dimensions' cross appeal, it argues the district court erred in denying Six Dimensions' motion for a new trial on its claim for misappropriation of trade secrets.  District courts may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  FED. R. CIV. P. 59(a)(1).  District courts "should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence."  *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).  Whether a verdict is against the great weight of the evidence is a question committed to the district court's sound discretion.  *Id.*  Accordingly, we will affirm the denial of a motion for a new trial unless the moving party, on appeal, "makes a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court . . . abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence."  *Id.* (quotation marks and emphasis omitted).

The Texas Uniform Trade Secrets Act ("TUTSA") provides six theories under which a plaintiff can establish misappropriation of a trade secret.  TEX. CIV. PRAC. & REM. CODE § 134A.002(3).  These six theories can be grouped into two categories: the "acquisition of a trade secret" and the "disclosure or use of a trade secret."  *Id.*  At trial, the jury was instructed on all six theories, and returned a defense verdict.  Six Dimensions moved for a new trial on its trade-secret claim, limiting the motion to the "acquisition of the trade secrets."  We also limit our review to that theory.

To find misappropriation of a trade secret on Six Dimensions' acquisition theory, the jury was instructed that it must find Perficient "[a]cquired the trade secret, and that Perficient Inc. knew or had reason to know that the trade secret was acquired by improper means."  The jury was further instructed that

17

"'improper means' include theft; bribery; misrepresentation; breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret; or espionage through electronic or other means." The jury instructions did not define "acquired," and Six Dimensions does not challenge the jury instructions on appeal.

Six Dimensions' acquisition theory relies on a documented conversation between Price and Perficient employee Robert Sumner that was admitted into evidence as "Plaintiff's Exhibit 81," and on Price's trial testimony. Price began working for Six Dimensions in 2013. Price signed an offer of employment with Perficient on October 7, 2015. That same day, Price gave a two-week notice to Six Dimensions. At some point prior to Price's termination of employment with Six Dimensions, Price possessed a thumb-drive — for reasons not explained in the record — containing Six Dimensions training materials. Price kept the thumb-drive after his termination of employment in violation of his Six Dimensions employment agreement.

On October 27, 2015, Price and Sumner discussed the Six Dimensions training materials. Price told Sumner that Price had Six Dimensions training materials, and Sumner told Price to "cleanse your materials and upload," meaning remove "any 6D references" and upload to a Perficient shared-document system. Price further explained that he had the "entire AEM training," which he described as "VERY deep and thorough, and module based." Sumner responded that he "look[ed] forward to seeing the material."

At trial, Price testified that he kept the Six Dimensions training materials after leaving Six Dimensions to "benefit Perficient," and that he continued to possess the training materials after he began his employment with Perficient. On cross examination, though, Price clarified that he did "nothing" with the training materials. Price also testified that he did not provide the training materials to anyone at Perficient, that no one at Perficient

ever used the training materials, and that he never cleansed the training materials or uploaded the training materials to a Perficient document system.

Price also testified on cross examination that shortly after the first identified conversation he had with Sumner, they again spoke by telephone regarding the training materials. They "discussed the nature of what [the training materials] were and what [they] contained." In that conversation, Sumner told Price "[l]et's not use" the training materials. Price testified that the choice not to use the training materials was based on Perficient's having a "robust training already in their partnership with Adobe and the solution partner portal trainings" that Price believed was "superior."

The jury found Perficient did not misappropriate the Six Dimensions training materials on an acquisition theory. Six Dimensions argues here that its evidence "clearly showed an absolute absence of evidence to support the jury's verdict." Six Dimensions contends Perficient certainly acquired, and therefore misappropriated, these training materials because Price: (1) "admitted that he misappropriated the training material when he acquired the trade secret through improper means," (2) "continued to possess the trade secrets while employed by Perficient," and (3) told Sumner "the contents of the training material and the 'nature of what . . . [the trade secrets] were.'" Six Dimensions also asserts Perficient is liable for Price's individual tort of misappropriation through *respondeat superior* and ratification theories of liability. We address each of those arguments.

First, Price undoubtedly possessed training materials through improper means after his termination of employment with Six Dimensions because he retained the thumb-drive. At that point, Price was not a Perficient employee. Thus, the jury was entitled to find that Perficient did not misappropriate the training materials through Price's individual actions.

19

Second, it is undisputed that Price continued to possess the training materials while he was employed by Perficient. This presents a closer call. Six Dimensions provides no precedent, though, that as a matter of law, Perficient misappropriated the training materials when Price improperly acquired them before he was a Perficient employee and continued to possess them while he was a Perficient employee. We see no reason for that to be the law. That allows jurors to credit Price's trial testimony that he did not provide the training materials to anyone at Perficient, cleanse the training materials, or upload the training materials to a Perficient system.

Next, Six Dimensions argues that Perficient acquired the training materials when Price described them to Sumner. Nevertheless, the training materials were not entered into evidence and Six Dimensions obtained no testimony from Price detailing what he told Sumner about them. Without the training materials in evidence to compare with a more detailed account of the conversation, the evidence does not compel that Perficient acquired the training materials through the conversation.

Last, we will not consider Six Dimensions' *respondeat superior* and ratification theories of liability. One reason is that neither legal theory was alleged in Six Dimensions' complaint. Another is that the jury was not instructed on either theory. Six Dimensions' Rule 59(a) motion for a new trial was not a proper vehicle "to raise arguments which could, and should, have been made before the judgment issued" or to "argue a case under a new legal theory." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007). Thus, these theories are not properly before us.

There was not "an absolute absence of evidence to support the jury's verdict" that Perficient had not misappropriated these training materials through acquisition. *See Whitehead*, 163 F.3d at 269. The district court did

No. 19-20505

not abuse its discretion "in refusing to find the jury's verdict contrary to the great weight of the evidence." *Id.*

The judgment is REVERSED in part as to the portion of the judgment that held Brading breached a contract and awarded damages for the breach to Six Dimensions. Otherwise, the judgment is AFFIRMED.