# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 3, 2022

Lyle W. Cayce
Clerk

No. 20-20073

———

Ureteknologia de Mexico S.A. de C.V.; Urelift S.A. de C.V.,

*Plaintiffs—Appellants/Cross-Appellees*,

*versus*

Uretek (USA), Incorporated,

*Defendant—Appellee/Cross-Appellant*.

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2762

———

Before Stewart, Haynes, and Graves, *Circuit Judges*.

Per Curiam:*

This case concerns a breach of contract dispute between Plaintiff-Appellant Ureteknologia de Mexico S.A. de C.V. ("UdeM"), Plaintiff-Appellant Urelift S.A. de C.V. ("Urelift"), and Defendant-Appellee Uretek (USA), Inc. ("Uretek"). Uretek created a ground-stabilization process and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

sublicensed that process for UdeM's exclusive use in Mexico (which UdeM subsequently sublicensed to Urelift). Appellants allege that Uretek violated this exclusivity agreement, thereby forcing Urelift to accept lower pay on four ground-stabilization projects and resulting in Urelift's failure to secure two other projects.

After a four-day trial, a jury awarded Appellants liquidated damages, lost profits on the four completed projects, and lost profits on the two unrealized projects. Uretek moved for judgment as a matter of law, which the district court partially granted, holding that UdeM was entitled to liquidated damages but that Urelift was not entitled to lost profits. Accordingly, attorneys' fees were partially awarded.

UdeM and Urelift appealed the district court's denial of lost profits and failure to grant full attorneys' fees. Uretek cross-appealed the district court's grant of liquidated damages and grant of partial attorneys' fees. For the reasons set forth below, we AFFIRM on all counts.

## I.    Background

Uretek is a Houston-based company that developed a patented process—the Uretek Process—for injecting expansive polyurethane foam into the ground. As Appellants explained, the goal of this process is to stabilize the ground against "gradual movements," which may "go unnoticed until buildings and roads begin to crack, sink, and become unstable." In 2003, Uretek entered into a Sublicense Agreement with UdeM, a Mexican corporation, whereby Uretek agreed that UdeM could "exclusively market the Uretek processes and products in Mexico." UdeM sublicensed its exclusive rights to sell Uretek processes and products in Mexico to Urelift.

In the years following the Sublicense Agreement, Urelift used the Uretek Process to help secure multiple projects in Mexico. In 2009, Mexico

No. 20-20073

City awarded Urelift the Sistema de Transporte Colectivo project ("STC") on a sole-source basis at a price of MX$735.34 per kilogram of polymer.[1] At trial for the current litigation, Francisco Alvarez—a partner and investor in UdeM and Urelift—distinguished sole-source contracts from competitive bids and testified that the sole-source designation allowed Urelift to sell other jobs for the government "at that price." Alvarez further testified that competitive bids forced Urelift to reduce its prices. However, Alvarez was neither tendered nor accepted as an expert witness. UdeM and Urelift tendered no expert on Mexican law to explain the implications of the sole-source designation.

In 2010, the Barron family (whose trust owned Uretek) formed Structural Plastics, Inc. ("SPI") to market Uretek production materials outside of the United States. SPI is owned by Mindy Barron Howard (daughter of Uretek CEO Brent Barron) and her husband, Galen Howard.

That same year, Uretek released UdeM from its obligation "to purchase a minimum amount of products and services." The parties also amended their original Sublicense Agreement. The original Sublicense Agreement contained a provision authorizing liquidated damages only to Uretek in case of breach by UdeM. The amendment authorized liquidated damages to either party in the event of breach by the other, adding the following:

> (4) b. Prohibited Sales of URETEK PROCESSES to Customers Inside the TERRITORY. In the event URETEK sells services utilizing URETEK PROCESSES to a customer

---

[1] There are two STC projects relevant to this case—the 2009 sole-source contract awarded to Urelift and a 2016 competitive bid won by ALSO. The latter is "commonly referred to as 'Metro Linea A.'" For ease of reference, only the 2009 sole-source STC project will be referred to as "STC." The 2016 project will be referred to as "Metro Linea A."

> inside the TERRITORY, URETEK shall pay, and agrees to pay, SUBLICENSEE liquidated damages equal to fifty percent (50%) of the gross revenues collected from such customers no later than fifteen days from written notification by SUBLICENSEE of such demand therefor.

In 2011, Uretek challenged the validity of the 2010 amendments to the Sublicense Agreement. The case went to a jury trial in April 2013, and the jury found in UdeM's favor. Uretek appealed, and in 2014, a prior panel of this court affirmed the validity of the amended Sublicense Agreement, *Uretek (USA), Inc. v. Ureteknologia de Mex. S.A. de C.V.*, 589 F. App'x 710, 713–15, 716 (5th Cir. 2014) (per curiam).

As the initial litigation proceeded, the factual predicate underlying the current litigation began to form. Despite its earlier sole-source designation, Urelift lowered prices on two projects in 2013—the Caminos y Puentes Federales de Ingresos y Servicios Conexos project ("CAPUFE") and the first of two Secretaria de Infraestructura y Obra Publica's projects ("SIOP #1")—allegedly due to competition. It won both projects, but at a lower price than the MX$735.34/kg received when Urelift won STC on a sole-source basis some years earlier. Specifically, CAPUFE was awarded at MX$223.55/kg and SIOP #1 at MX$612.37/kg.

Though the record provides no exact date, at some point—late 2013 at the earliest, late 2015 at the latest—Luis Sosa and Abel Guzman formed a soil-stabilization company called ALSO. ALSO purchased Uretek products from SPI. Sosa testified that the first purchase occurred in late 2015.

Importantly, key individuals at Uretek and ALSO communicated via email throughout 2014. In a May 2014 email from Guzman to Sosa and Barron, Guzman recounted a meeting with project managers regarding the Metro Linea A project where he raised issues about Urelift and noted that Uretek planned to use the Uretek polymer with someone other than Urelift.

A few months after that email, Urelift again faced alleged competition, winning two contracts but, again, at different prices. Urelift's winning streak ended in 2016 when it lost two projects to ALSO. First, in May 2016, ALSO obtained the Chapultepec project on a sole-source basis. Second, in July 2016, three companies submitted competitive bids on the Metro Linea A project: ALSO, Comsa Emte S.A. de C.V. ("Comsa Emte"), and Urelift, but Comsa Emte and Urelift were then disqualified for various reasons. Accordingly, ALSO secured the Metro Linea A project. Immediately preceding the bid, however, Barron sent a letter to the Metro Transportation Systems Project Manager, responding to "certain patent claims recently made by a representative of Urelift SA de CV." The letter attached the European and U.S. patents and stated that no Mexican patent had been issued.

UdeM and Urelift filed suit against Uretek in September 2016, alleging that Uretek breached the Sublicense Agreement by competing with UdeM and Urelift in Mexico. The case was tried by a jury in March 2019. The jury ruled against Uretek and awarded liquidated damages (as required by the Sublicense Agreement) and lost profits. Specifically, the jury awarded $1,460,000 in liquidated damages, an aggregated award of $6,110,000 on the four completed projects (because they were obtained at a price point lower than the STC price), $2,650,000 in lost profits for Chapultepec, and $4,310,000 in lost profits for Metro Linea A.

Uretek challenged the jury awards, moving for judgment as a matter of law. The district court denied the motion with respect to liquidated damages and granted the motion with respect to lost profits. Uretek subsequently filed a Rule 59(e) motion to alter or amend the judgment based on an intervening change in controlling law. The district court denied the Rule 59(e) motion on procedural grounds, holding that Uretek waived the argument that the liquidated-damages clause was unenforceable. UdeM then

No. 20-20073

filed a motion for attorneys' fees, which the district court granted in part and denied in part, allowing UdeM to recover attorneys' fees related to its liquidated-damages claim. UdeM and Urelift timely appealed, and Uretek timely cross-appealed.

## II.     Jurisdiction & Standards of Review

The district court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the grant or denial of judgment as a matter of law de novo. *Hurst v. Lee Cnty.*, 764 F.3d 480, 483 (5th Cir. 2014). We review issues of waiver and attorneys' fees for abuse of discretion, *see Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 225 (5th Cir. 2020) (waiver); *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 421 (5th Cir. 2017) (attorneys' fees); and we generally review a Rule 59(e) ruling for abuse of discretion, but "[t]o the extent that a ruling was a reconsideration of a question of law . . . the standard of review is *de novo*," *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quotation omitted).

## III.     Discussion

On appeal, Uretek challenges the district court's order awarding liquidated damages, Urelift challenges the district court's order that it take nothing on its lost-profits claims, and all the parties have various challenges to the district court's order regarding attorneys' fees. We discuss each issue in turn below and affirm the judgment in full.

## A.     Liquidated Damages

The district court correctly held that UdeM is entitled to liquidated damages. We begin with the waiver issue.

On January 17, 2020, the district court denied Uretek's Rule 50(b) motion with respect to liquidated damages. The court held that the liquidated-damages provision of the amended Sublicence Agreement was not

6

an unenforceable penalty because—consistent with the factors discussed by the Texas Supreme Court in *Phillips v. Phillips*, 820 S.W.2d 785 (Tex. 1991)[2]—UdeM's harm from Uretek's breach was difficult to estimate and the provision offered a reasonable way to calculate damages.

On February 7, 2020, the Texas Supreme Court decided *Atrium Medical Center, LP v. Houston Red C LLC*, 595 S.W.3d 188 (Tex. 2020), in which it held that the "party seeking liquidated damages bears the burden of showing that the provision, as drafted, accounts for" the *Phillips* factors. *Id.* at 192. If the provision becomes an unenforceable penalty "due to unanticipated events," *id.* at 192–93, then the breaching party is tasked with showing an "'unbridgeable discrepancy' between liquidated and actual damages," *id.* at 198.

On February 14, 2020, Uretek filed a Rule 59(e) motion to alter or amend the judgment on the grounds that *Atrium* constituted an "intervening change in controlling law." The district court denied the motion. But on that motion, the district court did not reach the merits of the liquidated-damages issue, holding instead that Uretek had waived the issue by failing to raise it in the Joint Pretrial Order and its Rule 50(a) motion.

While we disagree with this waiver conclusion, we may affirm based on any ground supported by the record, *see Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 952 (5th Cir. 1991), and the record here fully supports UdeM's entitlement to liquidated damages.

---

[2] "In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips*, 820 S.W.2d at 788 (quotation omitted).

A liquidated-damages provision is enforceable under Texas law if, "at the time the parties' agreement was made, (1) the harm that would result from a breach was difficult to estimate and (2) the liquidated damages provision reasonably forecast[s] just compensation." *Atrium*, 595 S.W.3d at 198. But because a facially enforceable liquidated-damages provision "can nevertheless operate" like a penalty when applied, Texas law "requires a third step: courts must examine whether, at the time of the breach, an 'unbridgeable discrepancy' exists between actual and liquidated damages." *Id.* at 190.

Turning to step one: at the time UdeM and Urelift entered into its agreement, damages were difficult to calculate; indeed, Urelift's arguments about the damages support that conclusion. We have previously observed the inherent difficulty in calculating damages from a non-compete agreement, recognizing that "covenants not to compete often include a liquidated damages provision to avoid the difficulty of calculating damages." *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006); *accord Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 355 (5th Cir. 2013). This case is no exception. UdeM paid a licensing fee—i.e., valuable consideration—for its exclusive right to the Uretek Process in Mexico. But, unlike Urelift, UdeM is not entitled to lost profits given that it is a holding company with no active operations. Therefore, as the district court concluded, "[t]he diminishment of value caused by Uretek's breach is difficult to ascertain because UdeM's benefit is not direct."

On to step two: UdeM and Uretek's agreement to pay 50% of gross revenues in liquidated damages was a reasonable estimate of just compensation. We begin by noting that the same exact liquidated-damages estimation that applies against Uretek (50% of gross revenues if Uretek breaches) *also* applies against UdeM (50% of gross revenues if UdeM breaches). This suggests that, at the time the provision was made, both

parties believed this method of calculating liquidated damages to be necessary and appropriate. Moreover, the Texas Supreme Court emphasized in both *Phillips* and *Atrium* two circumstances in which a liquidated-damages estimation would be facially unreasonable: (1) if the estimation is a multiple of actual damages (e.g., ten times gross revenues); or (2) if the estimation treats dissimilar breaches similarly (e.g., subjecting the breaching party to a $10 million penalty, regardless of the amount of gross revenues gained or the extent of the breach). *See Phillips*, 820 S.W.2d at 789; *Atrium*, 595 S.W.3d at 196 ("The contract provision in this case neither multiplies actual damages nor penalizes dissimilar breaches with the same broad brush."). Here, neither issue exists. The liquidated-damages estimate does not multiply gross revenues; it divides them. Nor does it treat dissimilar breaches similarly; the liquidated award is pegged to actual revenues. The estimation is, therefore, reasonable.

Having satisfied steps one and two, the provision is facially valid. We now turn to the as-applied challenge in step three. Uretek failed to rebut the validity of the provision by "demonstrat[ing] an 'unbridgeable discrepancy' between liquidated and actual damages." *See Atrium*, 595 S.W.3d at 198. As the district court observed: "Uretek offers one sentence in argument that the harm to UdeM is not difficult to estimate. Uretek's conclusory statement is not sufficient to overcome the contractual agreement and demonstrate the necessary "unbridgeable discrepancy." Accordingly, we agree with the district court's holding that UdeM is entitled to liquidated damages.

## B.    Lost Profits

We clarify at the outset the core difference between liquidated damages and lost profits: liquidated damages may be awarded upon proof of breach if an enforceable liquidated-damages provision exists, but for lost profits, proof of breach alone is insufficient; the non-breaching party must

*also* prove a causal connection between the breach and the lost profits. *See* 24 WILLISTON ON CONTRACTS §§ 64:14, 65:33. This means that for Urelift to recover on the four completed projects, it must prove that, but-for Uretek's breach, it would have received the STC price point on those projects. For Urelift to recover lost profits on Chapultepec and Metro Linea A, it must prove that it would have won the two projects absent Uretek's interference. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 861–62 (Tex. 2017) (holding the evidence was legally insufficient to support a lost-profits award where there was no evidence plaintiff's bid would have won the contract).

As a matter of law, Urelift cannot prevail because it failed to prove that but-for Uretek's breach, it would have received more money for the four completed projects or won the Chapultepec or Metro Linea A projects. While there is some support for the jury finding of breach in part, evidence of breach alone cannot support a jury finding of causation for lost profits.

### i. *Four Completed Projects*

Urelift argues that it "had to reduce its price for CAPUFE, SIOP #1, SIOP #2, and GFB projects because Uretek started competing with Urelift in the Mexican market" through ALSO in 2013. There are two issues, here. First, Urelift fails to prove that Uretek actually interfered with these projects. Second, even if Urelift could prove interference, Urelift fails to prove that but-for the interference, it would have secured STC pricing on these four projects.

First, there is no evidence that Uretek actually interfered with these four projects. As the district court explained, the four projects were awarded in October 2013, December 2013, August 2014, and May 2015, but the record showed that ALSO had not actually bid on any project prior to September 2015. Alvarez even "conceded that the competition on these four contracts

was 'unknown,' and that Urelift did not lose any bid because of that competition."

At oral argument, Appellants relied on the May 2014 email discussed above, which does not establish interference in the October 2013 and December 2013 projects. Moreover, because the email only references Metro Linea A, it does not show that ALSO interfered with the August 2014 or May 2015 projects.

Even assuming arguendo that the email can show interference with the four completed projects, to succeed on its lost-profits claims for those four projects, Urelift must reasonably show that the meeting discussed in the email had some impact on the conduct of the Mexican government. The record does not support such a finding. Prior to the meeting, Urelift won two of the disputed projects. After the meeting, Urelift won the other two disputed projects. So, the Mexican government acted in the same way before and after the meeting. Moreover, outside the two post-meeting projects that Urelift seeks lost profits on, Urelift won three additional projects and received *more* for those projects than the STC pricing. In fact, Urelift received the two highest-priced contracts it had ever received in December 2015 and March 2016. Thus, the evidence is insufficient.

In any event, the second issue Urelift faces is that even if it could show that Uretek interfered with the bidding on these four projects, there is no legally sufficient evidence demonstrating that Urelift lost any money. To calculate lost profits, Urelift's expert subtracted the polymer price received on the four completed projects from the price received for STC in 2009, arguing that the sole-source designation made the STC price its "base" price. But Urelift did not present any legally sufficient evidence establishing that the "base" price accurately marked the floor price. In fact, on three *other* occasions after receiving sole-source designation, Urelift did not secure the

STC price, receiving lower prices for projects in 2010–2013. Moreover, as the district court pointed out, Urelift only presented testimony from Alvarez to support its argument that "obtaining a sole-source contract designation in 2009 from one government agency" meant that "all other government agencies were required to award Urelift contracts through sole-source bids" at the STC price. Conversely, Sosa testified that no national price existed for polymers in Mexico. But neither Alvarez nor Sosa were tendered as experts on Mexican law, and no expert on Mexican law offered testimony regarding the pricing of polymers.

Under Texas law, lost profits are recoverable as damages only if they can be proven "with reasonable certainty." *Tex. Instruments v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 278–79 (Tex. 1994). Given the record, Urelift did not prove with reasonable certainty that Uretek interfered with the four completed projects or that it would have received STC pricing but-for Uretek's interference. The district court, therefore, correctly held that there was not sufficient evidence to support the jury's award of damages on the four completed projects.

### ii. Two Unrealized Projects

Urelift also failed to prove with reasonable certainty that it would have won the Chapultepec or Metro Linea A projects had Uretek not interfered. The Texas Supreme Court's decision in *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998), is helpful here. In *Formosa*, a contractor brought suit to recover lost profits based on alleged fraud, breach of contract, and breaches of the duties of good faith and fair dealing. *Id.* at 43. The contractor then attempted to prove his claim for lost profits by using calculations based on hypothetical bids. *Id.* at 49–50. The Texas Supreme Court rejected this approach and held that the awarded damages for lost profits were "entirely speculative" because "there [wa]s no

evidence that [the party seeking damages] would have been awarded the project" had it made a bid. *Id.*

As in *Formosa*, Urelift did not offer anything more than speculative evidence to show that it would have been awarded either Chapultepec or Metro Linea A. Starting with Chapultepec: Chapultepec was awarded to ALSO on a sole-source basis, meaning that Urelift and other companies could not submit bids for the project. In support of the argument that but-for Uretek's interference, Urelift would have won Chapultepec, Urelift points to Alvarez's testimony that Urelift would have bid on the project had it been given the opportunity to do so and that Uretek usurped that opportunity. Urelift, however, does not offer any evidence that the Chapultepec principals, absent any involvement from Uretek, would have awarded the project to Urelift, that they would have chosen Urelift over any other bidder, or that they exclusively wanted the Uretek Process.[3]

Urelift's evidence with regards to Metro Linea A is just as speculative. The Metro Linea A project was awarded based on a bid process, and three companies entered bids: ALSO, Comsa Emte, and Urelift. But the Metro Linea A principals disqualified Urelift's bid for several unrelated reasons:

---

[3] Urelift insists that the district court faulted it for presenting only circumstantial rather than direct evidence, noting that "[a]ny ultimate fact may be proved by circumstantial evidence." *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993).

Urelift misses the point, here: circumstantial evidence would, indeed, be helpful, but Urelift fails to present any circumstantial evidence regarding the conduct of Chapultepec on which a reasonable jury could rely. The only circumstantial evidence Urelift presented on the conduct of Chapultepec principals specifically is that the principals awarded the project to ALSO as a sole source. Alvarez (who, again, was neither tendered nor accepted as an expert on Mexican law) indicates only that "most of the time[]" Urelift was "awarded a contract as the sole source." That does *not* mean that when a government agency awards a sole-source contract, it will continue to use that sole-source designation in every future project. In other words, the sole-source designation cannot on its own support a lost-profits award.

"(1) [the principles] lacked evidence that Urelift had adequate working capital; (2) [Urelift] failed to adequately document the monthly amounts of labor, machinery, service personnel, and materials to be expended; (3) [Urelift] failed to analyze the costs of the operation; and (4) [Urelift] lacked a detailed analysis of unit pricing." Urelift's bid price was also higher than Comsa Emte's.

Urelift asks us to ignore all the reasons it would not have been awarded Metro Linea A, basing its lost-profits claim on several inferences: that Mexico City wanted the Uretek Process, that Mexico City *might* have therefore overlooked the multitude of reasons it disqualified Urelift's bid, that Mexico City cared about having the Uretek Process *more* than it cared about cost, and that Comsa Emte was not a serious competitor.

Urelift asks us to make all these inferences in the absence of any evidence about or testimony from Mexico City officials. Instead, Urelift points us to the May 2014 Guzman email. Again, that email is not helpful, and Urelift's other evidence does not prove causation either.

We deeply respect and recognize the importance of jury decisions, but they still must be based upon evidence, not speculation. In order for Urelift to succeed, it needed to prove not only that the Mexican government wanted the Uretek Process, but also that it was solely motivated by its desire to use that process. To reach that conclusion, the jury was required to stack inference upon inference on nothing more than Urelift's word. That is insufficient. *See, e.g.*, *Gutierrez v. Excel Corp.*, 106 F.3d 683, 689 (5th Cir. 1997).

To be clear, the jury could reasonably have made one assumption based on the May 2014 email: that the Mexican government *preferred* the Uretek Process. But the other assumptions—that the Mexican government's preference for the Uretek Process trumped all other

considerations (i.e., cost or all the other reasons it disqualified Urelift's bid), and that the government's indicated preference for the Uretek Process in 2014 necessarily predicts their decision in 2016—could not reasonably be made. As such, Urelift could not reasonably prove its entitlement to lost profits.

## C.     Attorneys' Fees

Uretek argues that under the Texas Covenant Not to Compete Act, attorneys' fees may not be awarded "on claims for breach of a covenant not to compete (except under circumstances not existing here)." Neither the district court nor Appellants dispute the requirements of the Act. Rather, the district court held, and Appellants argue, that Uretek waived the issue.

We have previously noted—specifically in the context of the Texas Covenants Not to Compete Act—that failure to "*properly* raise the issue before the district court" constitutes waiver. *Olander v. Compass Bank*, 363 F.3d 560, 567 n.21 (5th Cir. 2004) (emphasis added). Here, Uretek did not raise this statutory bar in its answer, in the Joint Pretrial Order, or in any briefing prior to its reply to UdeM's motion for attorneys' fees. Moreover, in the Joint Pretrial Order, Uretek, UdeM, and Urelift "agree[d] that [the] dispute is governed by the substantive law of the State of Texas." The parties then set out sixteen principles of Texas law that they agreed upon. Not once did they mention the Act. The parties also set out several principles of Texas law on which they disagreed. Again, they did not mention the Act.

On appeal, Uretek notes that the Joint Pretrial Order binds the parties to Texas substantive law (which is true), and then argues that "substantive law" means "*statutory* as well as common law," therefore binding all parties to the Act. We do not agree that the word "substantive" necessarily means "statutory" and specifically means the Texas Covenants Not to Compete Act. At the very least, the district court did not abuse its discretion in holding

No. 20-20073

that the issue was not *properly* before it.  *See Six Dimensions, Inc.*, 969 F.3d at 225.  The issue is, therefore, waived.

Given that we affirm the district court's decisions on liquidated damages and lost profits, we also affirm the segregation of attorneys' fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

AFFIRMED.